## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**HEIDI JEANETTE VOUGHT,**

**Plaintiff,**

**v.**                                                    **Case No:   6:15-cv-98-Orl-22GJK**

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

---

# REPORT AND RECOMMENDATION

Heidi Jeanette Vought (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income ("SSI") benefits.   Doc. No. 1.   Claimant argues the Administrative Law Judge (the "ALJ") erred by: 1) failing to apply the correct legal standards to her electrolyte impairments and limitations; and 2) not developing a full and fair record with respect to her mental impairments.   Doc. No. 19 at 20-24, 28-33.   Claimant requests the matter be reversed and remanded for further proceedings.   *Id*. at 38.   For the reasons that follow, it is **RECOMMENDED** the Commissioner's final decision be **AFFIRMED**.

## I.     PROCEDURAL HISTORY.

On June 18, 2010, Claimant filed an application for supplemental security income, alleging disability beginning on June 1, 2004.   R. 348.   Claimant claimed she was disabled as a result of the following impairments: degenerative bone disease; bulging discs; diabetes; arthritis; tendonitis; thyroid problems; gout; migraines; depression; anxiety; herpes; and, pain in multiple joints.   R. 114, 384.   On May 21, 2012, the ALJ held a hearing in this matter (the "First Hearing"), at which

Claimant and her representative were present.   R. 74-103.   On July 26, 2012, the ALJ rendered a decision finding Claimant was not disabled.   R. 123-32.   Claimant appealed the ALJ's decision to the Appeals Council.   On August 30, 2013, the Appeals Council entered an order remanding the matter back to the ALJ to address several issues.   R. 139-41.   On May 30, 2014, the ALJ held a second hearing in this matter (the "Second Hearing"), at which Claimant and her representative were present.   R. 40-71.   On July 18, 2014, the ALJ rendered a decision again finding Claimant was not disabled.   R. 10-26.   Claimant appealed the ALJ's decision to the Appeals Council.   On December 2, 2014, the Appeals Council denied Claimant's request for review.   R. 2-4.   This appeal ensued.

## II.   THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.   *See* 20 C.F.R. § 416.920(a).   In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted).   The steps are followed in order.   If it is determined the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## III.   <u>STANDARD OF REVIEW</u>.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.   *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).   Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.   *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560.   The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'"   *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

## IV.   <u>ANALYSIS</u>.

### A.  Electrolyte Impairments.

The record reveals Claimant has been intermittently assessed and/or diagnosed with hypokalemia[1] and hypomagnesemia[2] (collectively, the "Electrolyte Impairments") since June of

---

[1] Hypokalemia or hypopotassemia is defined as "[t]he presence of an abnormally small concentration of potassium ions in the circulating blood; occurs in familial periodic paralysis and in potassium depletion due to excessive loss from the gastrointestinal tract or kidneys."   Stedman's Medical Dictionary 836 (26th ed. 1995).

[2] Hypomagnesemia is defined as "[s]ubnormal blood serum concentration of magnesium[.]"   Stedman's Medical Dictionary 836 (26th ed. 1995).

2005.  *See generally* R. 480-987.   Claimant argues the ALJ erred by not including any of the limitations associated with her Electrolyte Impairments, to wit, chronic diarrhea, chest pain, palpitations, electrolyte loss, hospitalizations, headaches, weakness, shakiness, and irritable bowel syndrome, in his residual functional capacity ("RFC") determination or hypothetical to the vocational expert ("VE").   Doc. No. 19 at 28-33.   Thus, Claimant argues the ALJ's decision is not supported by substantial evidence.   The Commissioner maintains the "limitations" identified by Claimant are not limitations, but symptoms, diagnoses, and periods of treatment, which do not establish any work-related functional limitations.   *Id*. at 33-34.   Thus, the Commissioner argues Claimant has not proven she has any work-related functional limitations as a result of her Electrolyte Impairments.   *Id*. at 33-37.

At step four of the sequential evaluation process, the ALJ must determine a claimant's RFC and ability to do past relevant work.   20 C.F.R. § 416.920(a)(4)(iv).   The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."   *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); 20 C.F.R. § 416.945(a)(1).   In evaluating the claimant's RFC, the ALJ considers the claimant's ability to "meet the physical, mental, sensory, and other requirements of work[.]"   20 C.F.R. § 416.945(a)(4).   The ALJ must consider all of the claimant's medically determinable impairments, even those not designated as severe.   *Id*. § at 416.945(a)(2).

At step five of the sequential evaluation process, the ALJ uses the claimant's RFC, age, education, and work experience to determine if other work is available in significant numbers in the national economy that the claimant can perform.   *Phillips*, 357 F.3d at 1239.   The Commissioner bears the burden at step five to show the existence of such jobs.   *Id*. at 1241 n.10 (citing *Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996)).   One of the methods used to show

the claimant can perform other jobs in the national economy is through the testimony of a VE. *Id.* at 1239-40. If the ALJ relies on a VE, he or she must pose hypothetical questions which are accurate and which include all of a claimant's limitations. *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). However, the ALJ need not include "each and every symptom" of the claimant's impairments, *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1270 (11th Cir. 2007), or medical "findings . . . that the ALJ . . . properly rejected as unsupported" in the hypothetical question, *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). If the ALJ relies on the VE's testimony to find a claimant can perform other jobs in the national economy, but fails to include all the claimant's limitations in the hypothetical question, then the final decision is not supported by substantial evidence. *Pendley v. Heckler*, 767 F.2d 1561, 1562 (11th Cir. 1985) (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).[3]

As previously mentioned, Claimant has been intermittently assessed and/or diagnosed with Electrolyte Impairments since June of 2005. *See generally* R. 480-987. Specifically, Claimant's family physicians have intermittently assessed Claimant with hypokalemia and/or hypomagnesemia, and, as a result, have prescribed her potassium and magnesium supplements. R. 614, 725, 730-31, 733, 747-48, 806, 818, 871, 893, 901. On January 9, 2011, Claimant presented at Halifax Health complaining of chest pain, with associated symptoms of palpitations, nausea and shakiness. R. 624. Claimant was assessed with a myriad of conditions and symptoms, including hypokalemia and hypomagnesemia, and ultimately discharged on January 11, 2011. R. 626. On January 12, 2011, Claimant began treating with Dr. Donald Fornace, a cardiologist. R. 961-62. Claimant treated with Dr. Fornace on four (4) occasions in January and

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

February of 2011.   R. 949, 952, 954, 957, 961-62.   During that time, Dr. Fornace assessed Claimant with severe hypokalemia, secondary to Liddle's syndrome, which he treated with potassium supplements.   *Id.*[4]   On January 15, 2014, Claimant returned to Dr. Fornace indicating her hypokalemia "has actually stabilized, and she is not requiring the high dose [of] potassium she did in the past."   R. 947.   Subsequently, Dr. Fornace assessed Claimant with a "[p]otassium abnormality, now corrected, possible Liddle's syndrome" and recommended that she "exercise 45 minutes to an hour three times a week."   R. 932-33, 935-36.   On May 12, 2014, Claimant presented to Florida Hospital Memorial Medical Center (the "Florida Hospital") complaining that she had "low potassium, low magnesium and felt weak and almost passed out . . . due to lots of stress[.]"   R. 979.   Claimant was assessed with a myriad of conditions and symptoms, including hypokalemia and hypomagnesemia, and was ultimately discharged on May 13, 2014.   R. 981.   The record contains no medical opinions indicating Claimant has any functional limitations as a result of her Electrolyte Impairments.

At step two of the sequential evaluation process, the ALJ found Claimant suffers from the following severe impairments: degenerative disc disease; diabetes; osteoarthritis; obesity; tobacco abuse; and narcotic abuse.   R. 12.[5]   At step four of the sequential evaluation process, the ALJ

---

[4] Dr. Fornace provided the following commentary on Liddle's syndrome:

> Liddle's syndrome is a very intriguing disease.   Most potassium depleted states are related to the renin-angiotensin-aldosterone system.   Hyperaldosterone is one of the more classic presentations.   Liddle's syndrome is actually a channel transport disorder, and is related to the sodium channels also.   These patients have horrendous amounts of potassium losses and need potassium repletion, and even the use of Aldactone antagonist such as spironolactone.

R. 949.

[5] The undersigned notes the ALJ did not expressly mention Claimant's Electrolyte Impairments at step two of the sequential evaluation process.   R. 12-13.   While Claimant recognizes this fact in her brief, Doc. No. 19 at 33, she does not expressly argue that the ALJ erred as a result.   *See Id.* at 28-33.   Thus, Claimant should be deemed to have waived any such argument.   *See, e.g., Crawford*, 363 F.3d at 1161 (refusing to consider an argument claimant failed to raise in the district court).   Even if Claimant did argue the ALJ erred as step two by not addressing her Electrolyte

determined Claimant has a RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional limitations: 1) she can occasionally stoop, kneel, and crawl; 2) she can never climb ladders or scaffolds; and 3) she cannot be exposed to unprotected heights and temperature extremes.   R. 14.[6]

Claimant did not allege she was disabled as a result of her Electrolyte Impairments when she applied for SSI benefits.   *See* R. 114, 384.   Now, Claimant maintains her Electrolyte Impairments cause severe limitations, to wit, chronic diarrhea, chest pain, palpitations, electrolyte loss, hospitalizations, headaches, weakness, shakiness, and irritable bowel syndrome.   Doc. No. 19 at 28-33.   In support, Claimant cites a litany of treatment records containing assessments and/or diagnoses of hypokalemia and/or hypomagnesemia.   *Id*. at 28-30.   However, the mere diagnosis of an impairment does not say anything about whether the impairment causes functional limitations.   *See, e.g.*, *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (explaining the mere existence of an impairment does not reveal the extent to which that impairment limits a claimant's ability to perform work-related functions).   Further, as the Commissioner argues, the limitations Claimant associates with her Electrolyte Impairments are not limitations, let alone work-related functional limitations, but merely symptoms of her Electrolyte Impairments.   The

---

Impairments, the undersigned finds the argument unavailing.   As long as an ALJ's decision demonstrates consideration of the combined effect of all of a claimant's impairments, and if the ALJ finds a severe impairment at step two, the ALJ satisfies the requirements of the regulations.   *See, e.g.*, *Farrington v. Astrue*, Case No. 3:09-cv-94-J-TEM, 2010 WL 1252684, at *4 (M.D. Fla. Mar. 29, 2010).   Here, the ALJ found Claimant suffered from several severe impairments, and proceeded to consider the remaining steps of the sequential evaluation process.   R. 12-26. The ALJ's decision reveals he considered Claimant's Electrolyte Impairments (R. 14), and, as discussed in more detail below, committed no error in determining Claimant has an RFC to perform light work with additional nonexertional limitations despite her Electrolyte Impairments.   Accordingly, even if Claimant had not waived any step two argument, the undersigned's review finds the ALJ committed no error at step two of the sequential evaluation process.

[6] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.   Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.   To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities."   20 C.F.R. § 416.967(b).

record clearly demonstrates Claimant has intermittently suffered from Electrolyte Impairments, a fact the ALJ recognizes in his decision.   R. 14.   However, claimant points to no medical or opinion evidence indicating her Electrolyte Impairments cause any work-related functional limitations.   Doc. No. 19 at 28-33; *see Doughty*, 245 F.3d at 1278 (claimant bears the burden of proving his or her disability).   Absent such evidence, the ALJ was not required to include the symptoms discussed above in his RFC determination, or hypothetical to the VE.   Accordingly, it is **RECOMMENDED** the Court reject Claimant's first argument.

### B.  Duty to Develop.

Claimant maintains the ALJ failed to develop a full and fair record concerning the impact her anxiety and depression have on her ability to perform work-related functions.   Doc. No. 19 at 20-24.   Specifically, Claimant argues the ALJ should have ordered an "updated" mental health examination after the Second Hearing.   *Id*.   In response, the Commissioner argues the ALJ adequately and fairly developed the record, and thus was not required to obtain an updated mental health examination after the Second Hearing.   *Id*. at 24-28.

The claimant bears the burden of proving that he or she is disabled, and, thus, is responsible for producing evidence to support his or her claim for disability.   *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(a), (c)).   Nevertheless, since a hearing before an ALJ is not an adversarial proceeding, the ALJ has a basic obligation to develop a full and fair record.   *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).   This obligation requires the ALJ to develop the claimant's complete medical history for at least the twelve (12) months preceding the month in which the application was filed, *Ellison*, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(d)), and order a consultative examination when such an evaluation is necessary to make an informed

decision.  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 2003); *see also* 20 C.F.R. § 416.919a(b) ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision on your claim.").   Further, this basic duty applies regardless of whether the claimant is represented by counsel, but it rises to the level of a special duty when the claimant is unrepresented.  *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995) (per curiam).   By implication, where, as here, the claimant is represented during the administrative process or counsel has been waived, the special duty to develop the record does not take effect.  *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (per curiam) (citing *Brown*, 44 F.3d at 934).   In determining whether it is necessary to remand a case for development of the record, the Court considers "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice."  *Brown*, 44 F.3d at 935 (quotations and citations omitted).

The record contains several medical opinions concerning Claimant's mental health.   On August 9, 2010, Dr. Joanne Saxour, Claimant's prior primary care physician, completed a Supplemental Mental Impairment Questionnaire, indicating Claimant suffers from a mental impairment that significantly interferes with daily functioning.   R. 543.   However, Dr. Saxour did not identify Claimant's mental impairments, nor did she opine whether Claimant suffered any specific functional limitations as a result of her mental impairments.   *Id*.   On September 21, 2010, Dr. Jeff Oatley performed a psychological examination of Claimant, diagnosing her with adjustment disorder with mixed anxiety and depressed mood.   R. 547-49.   However, Dr. Oatley did not address whether or not Claimant suffered any functional limitations as a result of her mental impairments.   *Id*.   On October 11, 2010, Dr. Steven Wise completed a Psychiatric Review Technique ("PRT"), in which he opined claimant suffers from non-severe mental impairments.

R. 550-62.   Dr. Wise opined Claimant had only mild limitations in activities of daily living, social functioning, and concentration, persistence and pace.   R. 560.   On April 1, 2011, Dr. Ronald Chase completed a Case Analysis affirming the PRT completed by Dr. Wise.   R. 717.

On May 21, 2012, the ALJ held the First Hearing, at which Claimant's representative requested a consultative mental health examination.   R. 101.   The ALJ granted Claimant's request.   R. 102.   Thus, on June 13, 2012, Dr. Anne-Marie Nicolas performed a mental health examination of Claimant, resulting in a diagnostic impression of depressive disorder not otherwise specified ("NOS") and rule out obsessive compulsive disorder.   R. 826-28.   Dr. Nicolas opined that Claimant's "mental health symptoms . . . appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions."   R. 828.   On May 12, 2014, Dr. Fouty performed a Psychological Diagnostic Evaluation of Claimant, resulting in a diagnostic impression of major depressive disorder and generalized anxiety disorder.   R. 985-87.   Dr. Fouty did not opine whether or not Claimant suffered any functional limitations as a result of her mental impairments, but did recommend Claimant seek "outpatient psychopharmacological and psychotherapeutic intervention."   *Id.*

On May 30, 2014, the ALJ held the Second Hearing.   R. 40-71.   At the hearing, Dr. Alfred Jonas, a psychiatrist, testified as an independent psychiatric expert.   R. 40-54.   Dr. Jonas generally characterized the diagnoses addressed above as "tentative uncertain registration[s] of . . . diagnostic concept[s]."   R. 41.   As a result, Dr. Jonas testified that it is difficult to determine if Claimant's mental impairments result in any functional limitations.   R. 42, 46.   At the conclusion of the hearing, Claimant's representative requested a consultative mental health examination.   R. 63, 70.   However, the ALJ did not rule on Claimant's request at the hearing, or thereafter; thus no

further consultative mental examination occurred after the Second Hearing.[7]

At step two of the sequential evaluation process, the ALJ found Claimant suffered from non-severe impairments of anxiety and depression.   R. 13.   At step four of the sequential evaluation process, the ALJ, as previously mentioned, determined Claimant has an RFC to perform light work as defined in 20 C.F.R. § 416.967(b), with additional postural and environmental limitations.   R. 14.   Although the ALJ's RFC determination does not contain any mental limitations, the ALJ's decision contains a thorough discussion of medical and opinion evidence pertaining to Claimant's mental impairments.   R. 15-22, 24.   Specifically, the ALJ addressed each of the medical opinions, assigning significant weight to Drs. Oatley's Wise's, Chase's and Jonas' opinions, little weight to Dr. Nicolas' opinion and no weight to Drs. Saxour's and Fouty's opinions.   R. 21-22.   The Claimant does not challenge the weight assigned to any of the foregoing medical opinions.   Doc. No. 19 at 20-24.

Claimant essentially argues that despite the prior medical opinions concerning her mental impairments, Dr. Jonas' testimony reveals the medical record has yet to provide a clear picture about the limitations caused by her mental impairments, and the most recent opinion on the subject, Dr. Fouty's examination report, which Dr. Jonas did not have the benefit of reviewing, demonstrates that "necessary information was missing from the record[.]"   Doc. No. 19 at 22-24. Thus, Claimant maintains Dr. Fouty's examination report demonstrates the need for a third consultative mental health examination.   *Id.* at 24.

Claimant fails to articulate how Dr. Fouty's examination report creates a gap in the record that results in unfairness or clear prejudice.   *See Id.* at 23-24.   Despite this deficiency, the

---

[7] Claimant does not argue the ALJ erred by failing to rule on her request for a consultative mental health examination. Doc. No. 19 at 20-24.   Instead, Claimant simply argues that the ALJ should have ordered a consultative mental health examination.   *Id.*

undersigned notes Dr. Fouty's examination report does evidence a worsening of Claimant depression.  *Compare* R. 828 *with* R. 987.   However, the apparent worsening of Claimant's depression does not create a gap in the record that results in unfairness or clear prejudice.   First, Dr. Fouty's diagnosis of major depressive disorder does not, as previously discussed, say anything about whether the impairment causes any functional limitations.  *See Moore*, 405 F.3d at 1213 n.6.   Second, Dr. Fouty did not opine Claimant suffered any functional limitations as a result of her major depressive disorder.  *See* R. 985-87.   Third, and most significantly, the ALJ considered Dr. Fouty's examination report and assigned it no weight due to Claimant's lack of formal mental health treatment and Dr. Fouty's reliance on Claimant's reported history, which failed to include her use of controlled substances and drug seeking behavior.  R. 22.[8]   The ALJ provided good reasons to assign no weight to Dr. Fouty's examination, which the Claimant does not challenge on appeal.  *See* Doc. No. 19 at 20-24.   Therefore, on this record, the undersigned finds Dr. Fouty's examination report does not create a gap in the record that results in unfairness or clear prejudice.

Further, Claimant fails to articulate what "necessary information was missing from the record[.]"  *See* Doc. No. 19 at 22-24.   Contrary to Claimant's speculative argument, the record contains a vast amount of medical and opinion evidence concerning Claimant's mental health impairments, including two opinions stemming from consultative mental health examinations, as well as Dr. Fouty's report.   R. 40-54, 535, 547-49, 550-62, 717, 826-31, 985-87.   Thus, the ALJ had a wealth of information regarding Claimant's mental impairments and the effects, if any, those impairments have on her ability to function.   For these reasons, the undersigned finds Claimant has failed to demonstrate the existence of an evidentiary gap in the record resulting in unfairness

---

[8] Dr. Fouty's report indicates Claimant denied a history of alcohol or drug abuse.  R. 985.   However, as the ALJ discussed in his decision, the record reveals Claimant had a long history of drug abuse and drug-seeking behavior. *See, e.g.*, R. 22-24, 523, 647.

or clear prejudice, and thus has failed to demonstrate the ALJ erred by not ordering a third consultative mental health examination. *Ingram*, 496 F.3d at 1269. Accordingly, it is **RECOMMENDED** the Court reject Claimant's second argument.[9]

## V. CONCLUSION.

For the reasons stated above, it is **RECOMMENDED** the Court:

1. **AFFIRM** the final decision of the Commissioner; and

2. Direct the Clerk to close the case.

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on December 18, 2015.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

---

[9] Claimant also baldly argues "the ALJ failed to account for [her] mental limitations at steps four and five of the sequential evaluation process." Doc. No. 19 at 24. Although the ALJ found Claimant's anxiety and depression were non-severe impairments, the ALJ considered Claimant's mental impairments at step four of the sequential evaluation process, discussing the medical evidence and weighing the opinion evidence concerning her mental impairments. R. 14-24. As previously mentioned, Claimant does not challenge the weight assigned to any of the opinions relating to her mental impairments. Doc. No. 19 at 20-24. The opinions that were assigned significant weight did not indicate Claimant's mental impairments caused in any functional limitations. R. 40-54, 547-49, 550-62, 717. Therefore, to the extent Claimant argues the ALJ erred by not including any mental limitations in his RFC determination and hypothetical to the VE, that argument is unavailing and should be rejected.